UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:05-CV-171-R

In the Matter of the Complaint of
Bluegrass Marine, Inc., as Owner *pro hac vice*
of the M/V TITLETOWN U.S.A. Official No. 289724,
and Marquette Transportation Company, Inc.,
For Exoneration from or Limitation of Liability

**MEMORANDUM OPINION**

This matter is before the Court on the Limitation Petitioners' Motion for Partial Summary Judgment (Docket #52). The Plaintiff against whom summary judgment is sought, Janet Dale, as Personal Representative of Roger Dale, Deceased, responded (Docket #59) and the Limitation Petitioners replied (Docket #61). For the following reasons, the Limitation Petitioners' Motion for Partial Summary Judgment is **DENIED**.

**BACKGROUND**

On August 25, 2005, the M/V TITLETOWN U.S.A. was pushing fifteen barges on the Ohio River near Cincinnati, Ohio, when it collided with a houseboat, the P/C R U COMING, killing three men aboard the houseboat, Roger Dale, Gary Betz, and Donald Gilliland, and injuring a fourth, David Caudill. This incident is the subject of two separate actions before this Court.

On August 29, 2005, Bluegrass Marine, Inc. ("Bluegrass"), the owner pro hac vice of the M/V TITLETOWN U.S.A., and Marquette Transportation Company, Inc. ("Marquette"), the title owner of the M/V TITLETOWN U.S.A., (together known as the "Limitation Petitioners") filed Civil Action No. 5:05-CV-171, seeking limitation or exoneration of liability under 46 U.S.C. §§ 181, et seq., commonly known as the Limitation of Liability Act.

On August 30, 2005, this Court entered an Order approving the Limitation Petitioners' stipulation that the value of the vessel did not exceed $1,925,000.00, that there was no pending freight, that $250.00 was an adequate security for court costs, and enjoining the filing of any suits outside the limitation proceeding.  The Court also ordered that Notice be issued against all persons claiming damage for any and all losses, injuries, or death and destruction arising out of or occurring by reason of the incident and ordering them to file their claims with the Court before December 31, 2005.

On December 28, 2005, Janet Dale, as personal representative of Roger Dale; Chris Betz, as personal representative of Gary Betz; Abigail Smith as personal representative of Donald Gilliland; and survivor David Caudill and his wife Cami Caudill (together known as the "Claimants") filed a claim against the Limitation Petitioners, alleging the collision was the result of the Limitation Petitioners' negligence, inattention, and carelessness and the unseaworthiness of the vessel.

On January 13, 2006, this Court entered an Order of Default against any claims that had not already been filed by the Court imposed deadline for filing claims.

On June 29, 2007, the Limitation Petitioners filed counterclaims against each of the Claimants alleging the incident, for varying reasons, was caused by the actions or inaction of Roger Dale, Gary Betz, Donald Gilliland, and David Caudill.

On September 30, 2005, Janet Dale, as personal representative of Roger Dale; Chris Betz, as personal representative of Gary Betz; and survivor David Caudill and his wife Cami Caudill, filed Civil Action No. 5:05-CV-195 against Bluegrass and Marquette for the wrongful deaths of Dale and Betz, and for the injuries Caudill sustained.  The complaint was later amended to

Case 5:05-cv-00171-TBR   Document 66   Filed 01/04/08   Page 3 of 8 PageID #: 467

included as Defendants James Griggs, the captain of the M/V TITLETOWN U.S.A. on August 25, 2005, and Isaac Ross, the pilot of the M/V TITLETOWN U.S.A. on August 25, 2005. Abigail Smith and/or Melinda Enderle, as personal representative of Blake and Tyler Enderle, minor children of Donald Gilliland, were added as Plaintiffs. The complaint alleges that the Limitation Petitioners were careless, reckless, and negligent in causing the collision and seeks $50,000,000.00.

On October 24, 2006, this Court granted the parties' Joint Motion to Consolidate, for discovery purposes, the limitation action and the separate suit filed by the Plaintiffs/Claimants in this Court.

On October 31, 2007, the Limitation Petitioners filed, in both actions, the instant Motion for Partial Summary Judgment. The Limitation Petitioners seek to judicially estop Janet Dale, as personal representative of Roger Dale, deceased, from asserting a claim for loss of support.

On December 20, 2007, the Court consolidated Case No. 5:05-CV-195 into Case No. 5:05-CV-171 for all purposes.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The doctrine of judicial estoppel "'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The doctrine is meant "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-750 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). Judicial estoppel "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The Limitation Plaintiffs assert that Janet Dale ("Janet") should be judicially estopped from asserting a claim against them for loss of support due to Roger Dale's ("Roger") death because of the position asserted by the Dales in a prior bankruptcy proceeding. On November 13, 2003, Roger and Janet Dale filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio. In Schedule I of the petition, "Current Income of Individual Debtors," Roger's "Current Monthly gross wages, salary and commissions" is listed as $0.00. He does list $670.00 per month in the "Other monthly income" category as "family assistance." In contrast, Janet's "Current Monthly gross wages, salary and commissions" is listed as $2,250.00 and her "Total Monthly Income" is listed as $2,188.00. The Dales' "Combined Monthly Income" is listed as $2,858.00, which reflects the combination of Roger's "family assistance" and Janet's "Total Monthly Income."

Schedule I also asks the Debtor to "describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document," but the Dales left this section blank. The information provided for Roger's monthly gross wages, salary and commissions was not amended before the debt was discharged on April 26, 2007, twenty months after Roger's death.

Further, the Limitation Petitioners argue that the Dales' income tax returns also show that Roger was not providing any income to the family. The Dales' 2003 return reports a gross income of $29,122.00, which does not reflect Roger's purported $670.00 per month in family income, at least not for a full year, if Janet had a monthly salary of $2,250.00 as stated in the

5

bankruptcy petition.[1]  Further, their 2004 return reports even fewer earnings, totaling $25,189.00, and their 2005 return reports an income of $19,002.00.  The Limitation Petitioners/Defendants argue that this clearly indicates that Roger Dale was not earning any income before his death and does not even seem to include the alleged $670.00 per month in "family assistance."   In the alternative, the Limitation Petitioners argue that if Roger really was earning income that was not reported to the Bankruptcy Court, then the doctrine of judicial estoppel would prevent them from taking a contrary position in subsequent litigation.

The Limitation Petitioners argue that this situation meets the three judicial estoppel factors set forth in *New Hampshire v. Maine*.  532 U.S. at 750.  First, for judicial estoppel to apply, "a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (citing *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); *Browning Mfg. v. Mims* (In re Coastal Plains, Inc.), 179 F.3d 197, 206 (5th Cir. 1999); *Hossaini v. Western Mo. Medical Center*, 140 F.3d 1140, 1143 (8th Cir. 1998); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d. Cir.1997)).  Second, the court should ask "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982)).  Third, the court should ask "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751 (citing *Davis,*156 U.S. at 689; *Philadelphia, W., & B. R. Co. v. Howard*, 54 U.S. 307 (1852);

---

[1]If Janet was earning $2,250.00 per month, she would have a yearly salary of $27,000.00.  If Roger was receiving $670.00 per month in family assistance, he should have received $8,040.00 per year.

*Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)).

First, the Limitation Petitioners argue that the position taken by the Dales in Bankruptcy Court, that Roger provided no "monthly gross wages, salary and commissions," is clearly inconsistent with Janet's current position that she is entitled to receive damages for loss of support. Second, as their debt was discharged by the Bankruptcy Court, the Dales were successful in convincing the Court and their creditors to accept their position that Roger provided no support to the family. Third, Janet's claim for financial support, which she previously denied, would work an unfair advantage on the Limitation Petitioners because they could be ordered to recompense Janet for funds that never existed.

Contrary to the arguments raised in response, the Limitation Petitioners do not argue that judicial estoppel applies to Janet's claim because the Dales failed to include this cause of action on their bankruptcy schedules, nor do they argue that estoppel applies because Janet did not amend the petition to include this cause of action after it arose. *See, e.g. Browning Mfg*, 283 F.3d at 774. While "causes of action are among the assets that must be disclosed on a debtor's schedules," *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988), the Dales clearly did not contemplate this action when they filed their bankruptcy petition in 2003, and the Limitation Petitioners do not advance such an argument in their motion.

However, contrary to the Limitation Petitioners' position, the Court is not convinced that the first *New Hampshire v. Maine* factor is met here. The Court does not believe that Janet's loss of support claim is "clearly inconsistent" with the Dales' representation on their petition that Roger provided no monthly income or with their failure to amend the petition to reflect any change in income. *New Hampshire*, 532 U.S. at 750. An assertion on a bankruptcy petition that

the Debtor does not have a current monthly income does not precludes the possibility that the Debtor may, at some point the future, begin to provide such income. The fact that the Dales did not amend their petition prior to Roger's death to reflect any change in Roger's income does not affect this possibility.

Further, for similar reasons, the Court does not believe that allowing Janet to proceed with a loss of support claim would create the perception that the bankruptcy court was misled. *Id.* Janet's loss of support claim does not turn the fact that Roger did not have a monthly income at the time the petition was filed into a lie that misled the court. Finally, the Court does not believe that permitting Janet to assert a claim for loss of support would allow her to receive an unfair advantage or impose an unfair detriment on the Limitation Petitioners. *Id.* at 751. Janet's loss of support claim is one for loss of future support and the Limitation Petitioners cannot argue that such support would have never materialized. The Court believes, based on the information before it, that Janet is entitled to produce evidence regarding the loss of support claim, and the Limitation Petitioners may rebut such evidence at trial.

## CONCLUSION

For the foregoing reasons, the Limitation Petitioners' Motion for Partial Summary Judgment is **DENIED.**

An appropriate order shall issue.